**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**KARL LINARD MALLOY,**

**Appellant,**

**v.** **Civil Action No. 3:25cv780**

**WILLIAM A. BROSCIOUS,**

**Appellee.**

# MEMORANDUM OPINION

This matter comes before the Court on *pro se*[1] Appellant Karl Linard Malloy's appeal[2] from the United States Bankruptcy Court for the Eastern District of Virginia's (the "Bankruptcy Court") order entered September 11, 2025 denying Mr. Malloy's Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b) (the "§ 707(b) Order"). (ECF No. 1-1, at 1, 3–8.)[3]

---

[1] Mr. Malloy is an attorney licensed to practice law in the State of New York, the State of Maryland, and the District of Columbia, but he is not a member of the Virginia State Bar. *See In re Karl Linard Malloy*, Case No. 23-33442-KRH, ECF No. 426, at 5 n.4 (Bankr. E.D. Va. Oct. 28, 2024). For the purposes of this appeal, the Court will consider Mr. Malloy a *pro se* litigant.

[2] The instant matter is one of 45 appeals Mr. Malloy has filed with this Court. *See* 3:24-cv-02, 3:24-cv-59, 3:24-cv-170, 3:24-cv-727, 3:24-cv-728, 3:24-cv-729, 3:24-cv-778, 3:24-cv-779, 3:24-cv-785, 3:42-cv-786, 3:24-cv-788, 3:24-cv-790, 3:24-cv-791, 3:24-cv-792, 3:24-cv-793, 3:24-cv-794, 3:24-cv-795, 3:24-cv-796, 3:24-cv-797, 3:24-cv-828, 3:24-cv-832, 3:24-cv-891, 3:25-cv-21, 3:25-cv-104, 3:25-cv-300, 3:25-cv-416, 3:25-cv-417, 3:25-cv-525, 3:25-cv-534, 3:25-cv-760, 3:25-cv-780, 3:25-cv-781, 3:25-cv-834, 3:25-cv-866, 3:26-cv-21, 3:26-cv-22, 3:26-cv-82, 3:26-cv-8; 3:26-cv-494, 3:26-cv-751; 3:26-cv-761; 3:26-cv-762; 3:26-cv-848; 3:26-cv-894; 3:26-cv-972. The Court has ruled on 33 of these appeals, including the instant appeal.

[3] This Court employs the pagination assigned by the CM/ECF docketing system. The Court cites primarily to its own record, "(ECF No. X)." However, given the onslaught of paperwork submitted in support of these nearly entirely frivolous appeals, the Court supplements the record with citations to documents on the underlying Bankruptcy Court docket, Case No. 23-33442-KRH (Bankr. E.D. Va.), "(Bankr. ECF No. X)," and citations to a related adversary

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[4] For the reasons articulated below, the Court will affirm the Bankruptcy Court's § 707(b) Order and dismiss the appeal.

## I. Legal, Factual, and Procedural Background

### A. Legal Background

11 U.S.C. § 707(b) governs dismissal of Chapter 7 cases in which granting relief would abuse Chapter 7's provisions. Specifically, § 707(b) provides that a court

> *may* dismiss a case filed by an individual debtor under this chapter[5] whose debts are primarily consumer debtors, or, with the debtor's consent, convert such a case

---

bankruptcy proceeding, *Schelin v. Malloy*, No. 23-03043-KRH (Bankr. E.D. Va.), "(Ad. Pro. ECF No. X)".

[4] 28 U.S.C. § 158(a)(1) provides that "(a) The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees." *Id.*

The parties correctly argue that the § 707(a) Order is a "final judgment, order, [or] decree[]" over which the Court has jurisdiction. (ECF No. 6, at 4; ECF No. 7, at 8); *McDow v. Dudley*, 662 F.3d 284, 289 (4th Cir. 2011) ("We . . . hold that a bankruptcy court's order denying a § 707(b) motion to dismiss a Chapter 7 case as abusive is a final order within the meaning of 28 U.S.C. § 158(a).").

[5] Courts have questioned whether cases filed under Chapter 13 and converted to Chapter 7 are cases "filed by an individual debtor under this chapter" as required by § 707(b). *Compare Pollitzer v. Gebhart*, 860 F.3d 1334 (11th Cir. 2017) (section 707(b) applies to cases originally filed under chapter 13 and converted to chapter 7), *and Ad. Control Sols., Inc. v. Justice*, 639 F.3d 838 (8th Cir. 2011) (same), *with In re Dudley*, 405 B.R. 790 (W.D. Va. 2009) (section 707(b)'s language does not permit dismissal for abuse when the case is not originally filed under chapter 7).

Although neither party raised this issue before the Bankruptcy Court, this Court agrees with the sound reasoning articulated by the United States Court of Appeals for the Eleventh Circuit in *Pollitzer*.

> to chapter 11 or 13 of this title, *if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7].*

11 U.S.C. § 707(b)(1) (emphases added). When, according to a statutory formula known as the "means test," a debtor's income exceeds a certain threshold, a rebuttable presumption arises that granting relief would be an abuse of the Chapter 7 provisions. *Lynch v. Jackson*, 853 F.3d 116, 119 (4th Cir. 2017); 11 U.S.C. § 707(b)(2)(A) (setting out the means test).

Under 11 U.S.C. § 704, the United States Trustee is tasked with determining whether the debtor's Chapter 7 case "would be presumed to be an abuse under section 707(b)" and "fil[ing] with the court a statement" articulating the finding as to abuse. § 704(b)(1)(A). Within 30 days

---

As the *Pollitzer* court observed, while the text of § 707(b)(1) can be reasonably read to support both a finding that § 707(b) applies to converted cases and that it does not, *see Pollitzer*, 860 F.3d at 1338, the statute's "textual evolution" and the "context" of § 707(b)(1) demonstrate that Congress intended for § 707(b) to apply to converted cases as well as those initially filed under Chapter 7.

First, § 707(b)'s "textual evolution," from its enactment in 1984 and its amendment in 2005, "demonstrates that Congress intended the current version of § 707(b) to be a potent tool for bankruptcy courts to expeditiously dismiss Chapter 7 petitions filed by debtors with income sufficient to pay their creditors." *Pollitzer*, 860 F.3d at 1338–39. Reading § 707(b) as inapplicable to cases filed under Chapter 13 and converted to Chapter 7 would permit "a debtor [to] file a Chapter 13 petition" and immediately convert it to a Chapter 7 petition, "thereby avoid[ing] the abuse review Congress incorporated into § 707(b)." *Id.* As the *Pollitzer* court explained, it is "unlikely—indeed inconceivable—that Congress contemplated, much less authorized, such a result." *Id.*

Second, analyzing § 707(b)(1)'s text in the context of other subsections of § 707(b) and within the Bankruptcy Code supports a finding that § 707(b) applies to converted cases. *Id.* at 1339–40. For example, "Congress expressly excluded converted cases from the reach of other sections of the Code, but not from § 707(b)." *Id.* at 1340. In addition, other sections of the Bankruptcy Code that authorize dismissal of petitions exclude converted cases from dismissal. *Id.* (citing 11 U.S.C. § 1208(b) (providing that a court "shall" dismiss a Chapter 12 case "if the case has not been converted under section 706 or 1112 of this title").) No such exclusion exists in § 707(b).

For these reasons, this Court finds that § 707(b)'s provisions apply to cases, like the one before this Court, filed under Chapter 13 and converted to Chapter 7.

of filing the statement with the court, the United States Trustee is required to file either a motion to dismiss or convert under § 707(b) or a statement setting forth the reasons why the United States Trustee "does not consider such a motion to be appropriate."[6] § 704(b)(1)(2).

If the presumption of abuse is triggered, a debtor can rebut the presumption by demonstrating that "special circumstances" exist that justify additional expense or income for which there is no reasonable alternative. *Calhoun v. U.S. Trustee*, 650 F.3d 338, 341 n.1 (4th Cir. 2011); *see also* 11 U.S.C. § 707(b)(2)(B)(i)).

**B. <u>Factual Background</u>**

This Court has previously laid out the factual background underlying the instant bankruptcy proceeding (the "Bankruptcy Case"). *See, e.g.*, *Malloy v. Schelin*, No. 3:25-cv-417 (MHL), ECF No. 27, at 2–10 (E.D. Va. Sep. 1, 2026). A significantly truncated background shows that the Bankruptcy Case stems from a dispute between Mr. Malloy and Kristin Schelin and Mark Watson (the "Purchasers" or "Creditors") over a purchase agreement (the "Agreement") in which Mr. Malloy agreed to convey, and the Purchasers agreed to purchase, certain real property (the "Property") in Powhatan County, Virginia. (Ad. Pro. ECF No. 1, at 2.) The Purchasers sued Mr. Malloy in Powhatan County Circuit Court seeking, among other things, specific performance of the Agreement. (Ad. Pro. ECF No. 1, at 3.) On the eve of trial in the State Court Litigation, on October 5, 2023, Mr. Malloy filed a voluntary petition under Chapter 13, thereby initiating the Bankruptcy Case and staying the State Court Litigation by operation of

[6] In addition to the United States Trustee, the Chapter 7 trustee, the bankruptcy administrator, or "any party in interest" may move to dismiss under § 707(b). § 707(b)(1).

U.S.C. § 362.[7] (Bankr. ECF No. 1.) Mr. Malloy then removed the state case to the Bankruptcy Court, (Ad. Pro. ECF No. 1), and on the Purchasers' motion, (Ad. Pro. ECF No. 8), the Bankruptcy Court remanded the case to the Powhatan County Circuit Court, (Ad. Pro. ECF No. 16). In October 2024, the Powhatan County Circuit Court entered Final Judgment (the "Final Judgment") in favor of the Purchasers and awarded, among other things, specific performance requiring Mr. Malloy to comply with the terms of the Agreement. (Bankr. ECF No. 332-1, at 3.)

After the Powhatan County Circuit Court rendered judgment, the Bankruptcy Court adopted the findings of fact in the Final Judgment, found that the Agreement merged into the Final Judgment, and concluded that the Agreement was no longer executory and could not be rejected under 11 U.S.C. § 365. (Bankr. ECF No. 481, at 6–8.) Because Mr. Malloy's initial Chapter 13 plan (the "First Plan") provided for rejection of the Agreement, (*see* Bankr. ECF No. 20), the Bankruptcy Court determined that the First Plan was facially unconfirmable but permitted Mr. Malloy to "propose an amended plan that [would] allow him to satisfy the State Court Judgment." (Bankr. ECF No. 481, at 10.)

Mr. Malloy then proposed two amended Chapter 13 plans, (Bankr. ECF Nos. 632, 736), both of which the Bankruptcy Court denied as facially unconfirmable, (Bankr. ECF Nos. 723, 762). Following Mr. Malloy's submission of a third facially unconfirmable plan, and at the request of the Purchasers and the Chapter 13 Trustee, the Bankruptcy Court converted the case from one under Chapter 13 of Title 11 of the United States Code to one under Chapter 7 of Title

---

[7] When a debtor files a bankruptcy petition, the Bankruptcy Code provides for an automatic stay of all judicial actions against the debtor. *Herlihy v. DBMP, LLC*, 167 F.4th 142, 149 (4th Cir. 2026); *see* 11 U.S.C. § 362(a)(1).

11 of the United States Code.[8] (Bankr. ECF No. 762, at 6.) In converting the case, the Bankruptcy Court found that Mr. Malloy proceeded in Chapter 13 in bad faith, and that conversion would be in the best interests of his creditors and the estate. (Bankr. ECF No. 762, at 5–6.)

Following conversion, the United States Trustee appointed William Anthony Broscious as the Chapter 7 trustee for Mr. Malloy's bankruptcy estate. (Bankr. ECF No. 768.) On July 17, 2025, pursuant to his statutory duties under 11 U.S.C. § 704, the United States Trustee filed a statement with the Bankruptcy Court stating that, due to Mr. Malloy's income, his Chapter 7 case was presumed to be an abuse of the provisions of Chapter 7. (Bankr. ECF No. 840.) On August 12, 2025, the United States Trustee filed another statement with the Bankruptcy Court acknowledging that Mr. Malloy's case was presumptively abusive but declining to file a motion to dismiss pursuant to § 707(b). (Bankr. ECF No. 859.) The United States Trustee briefly explained his rationale for deciding not to move to dismiss the case, stating only: "due to the circumstances of this case, the United States Trustee has declined to file a motion to dismiss." (Bankr. ECF No. 859.)

Less than a month after the Bankruptcy Court converted the Bankruptcy Case to Chapter 7, on June 16, 2025, Mr. Malloy moved the Bankruptcy Court to dismiss the case under 11

---

[8] Chapters 13 and 7 serve different functions. Chapter 13, commonly called a wage earner's bankruptcy, "allows a debtor to retain his [or her] property if he [or she] proposes, and gains court confirmation of, a plan to repay his [or her] debts over a three- to five-year period." *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015). In contrast, Chapter 7 provides for "prompt liquidation of the debtor's assets." *Id.* at 513; *see also Janvey v. Romero*, 883 F.3d 406, 411 (4th Cir. 2018) ("Chapter 7 . . . allows debtors to discharge their outstanding debts in exchange for liquidating their nonexempt assets and distributing them to their creditors."). Under Chapter 7, a debtor's assets are "immediately transferred to a bankruptcy estate" controlled by a Chapter 7 trustee, who is charged with selling the property in the estate and distributing the proceeds to the debtor's creditors. *Harris*, 575 U.S. at 514.

U.S.C. § 707(a),[9] (Bankr. ECF No. 809), which the Bankruptcy Court denied, (Bankr. ECF No. 843).[10] Shortly thereafter, Mr. Malloy moved the Bankruptcy Court to dismiss the case under 11 U.S.C. § 707(b) (the "Motion to Dismiss"). (Bankr. ECF No. 865.) In the Motion to Dismiss, Mr. Malloy moved the Bankruptcy Court to dismiss the Bankruptcy Case

> on the grounds that the [Bankruptcy] Court's own actions in converting th[e] case from Chapter 13 to Chapter 7 – despite full knowledge that [Mr. Malloy's] income exceed[ed] the statutory threshold for the means test – constitute[d] an abuse of the provisions within the meaning of § 707(b).

(Bankr. ECF No. 865, at 1.) The Chapter 7 Trustee opposed Mr. Malloy's Motion to Dismiss, stating that he was "not aware of any changes in circumstances or new information that would warrant the [Bankruptcy] Court's dismissal of [the] Chapter 7 case." (Bankr. ECF No. 874, at 2.)

On September 9, 2025, the Bankruptcy Court held a hearing on the Motion to Dismiss (the "Hearing"). (Bankr. ECF No. 890.) During the Hearing, Mr. Malloy conceded that the presumption of abuse existed and that he had not rebutted it. (Bankr. ECF No. 890, at 23:3–25 ("The presumption of abuse is unrebutted. No special circumstances exist. In fact, the estate is solvent.").) However, rather than arguing that *he* had abused the Bankruptcy Code, Mr. Malloy insisted that the *Bankruptcy Court* had abused the Bankruptcy Code in at least two ways,[11] and

---

[9] Unlike § 707(b), dismissal under § 707(a) is not based on the means test. Instead, § 707(a) permits a bankruptcy court to dismiss a Chapter 7 case "for cause." § 707(a).

[10] Mr. Malloy also appealed the Bankruptcy Court's denial of his motion to dismiss under § 707(a) to this Court, which this Court affirmed. *See Malloy v. Broscious*, No. 3:25-cv-781 (MHL), ECF Nos. 19, 20 (E.D. Va. Sep. 11, 2026).

[11] Specifically, Mr. Malloy argued that the Bankruptcy Court abused the Bankruptcy Code by (1) converting the case to Chapter 7 despite being "well aware" that Mr. Malloy's "income levels [would] be too high" and would trigger the presumption of abuse, (Bankr. ECF No. 890, at 31:22–33:20), and (2) permitting a sale of the Property under 11 U.S.C. § 363(f), rendering his state appellate proceedings "forever [moot]," (Bankr. ECF No. 890, at 27:2–31:10).

that such actions by the Bankruptcy Court necessitated dismissal for "abuse" under § 707(b). (Bankr. ECF No. 890, at 22:11–23:23.) Neither Purchasers' counsel nor counsel for the Chapter 7 Trustee responded to Mr. Malloy's arguments. (Bankr. ECF No. 36:12–16.) The Office of the United States Trustee, consistent with its earlier position, asked the Bankruptcy Court to deny the Motion to Dismiss, noting that the terms of § 707(b) permit, but do not require, a court to dismiss a case where the presumption of abuse is unrebutted. (Bankr. ECF No. 890, at 36:20–37:5.)

The Bankruptcy Court orally denied the Motion to Dismiss. (Bankr. ECF No. 890, at 37:7–20.) Two days later, on September 11, 2025, the Bankruptcy Court issued the § 707(b) Order, memorializing its oral ruling and denying Mr. Malloy's Motion to Dismiss. (ECF No. 1-1, at 5–7.)

### B. <u>Procedural Background</u>

On September 24, 2025, Mr. Malloy appealed to this Court the Bankruptcy Court's § 707(b) Order. (ECF Nos. 1, 1-1.) On December 1, 2025, Mr. Malloy filed his appellate brief. (ECF No. 6.) On December 30, 2025, William Broscious, the Chapter 7 Trustee, filed his appellate brief. (ECF No. 7.) On January 13, 2026, Mr. Malloy replied. (ECF No. 8.)

## II. Standard of Review

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Ent. Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526–27 (E.D. Va. 2010) (citing *Webb v. Reserve Life Ins. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). A district court "review[s] the bankruptcy court's denial of a motion to dismiss for abuse of discretion, its factual findings for clear error, and its legal conclusions de novo." *Janvey v. Romero*, 883 F.3d 406, 410 (4th Cir. 2018). A court "review[s] de novo an issue of statutory

construction." *In re Sunterra Corp.*, 361 F.3d 257, 263 (4th Cir. 2004). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 324 (4th Cir. 2008) (quoting *United States Gypsum Co.*, 333 U.S. at 395). "A bankruptcy court abuses its discretion 'when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises.'" *Schultz v. Cheney*, No. 1:25-cv-322 (LMB), 2025 WL 2722657, at *5 (E.D. Va. Sep. 24, 2025) (quoting *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012)).

## **III. Analysis**

Mr. Malloy raises five issues on appeal,[12] which boil down to two primary arguments. First, Mr. Malloy contends that the Bankruptcy Court erred in concluding that "abuse" under § 707(b) contemplates abuse only by the debtor and does not encompass "abuse" by the Bankruptcy Court. (ECF No. 6, at 5, 13–14.) Second, Mr. Malloy argues that the Bankruptcy Court improperly exercised discretion in declining to dismiss the Bankruptcy Case under § 707(b) despite the unrebutted presumption of abuse. (ECF No. 6, at 5, 15–19.)

---

[12] Mr. Malloy also asserts that the Bankruptcy Court erred (1) in citing caselaw that relies on 11 U.S.C. § 707*(a)* (rather than § 707*(b)*) in reaching its decision and (2) in suggesting that debtors are not "parties in interest" under § 707(b) and, as such, cannot file motions to dismiss under that provision. (ECF No. 6, at 15–16.)

The Court thoroughly reviewed the record and finds no evidence that the Bankruptcy Court considered caselaw interpreting § 707(a), nor that the Bankruptcy Court ever suggested a debtor is not a "party in interest." Accordingly, the Court finds no error by the Bankruptcy Court as to these two issues.

Appellee disagrees on both counts. As to the first, Appellee argues the Bankruptcy Court properly found that "abuse" under § 707(b) addresses misconduct by the debtor, not the court. (ECF No. 7, at 10–13.) On the second point, Appellee submits that because Mr. Malloy did not argue before the Bankruptcy Court that the Bankruptcy Court lacked discretion to decline to dismiss the case under § 707(b), he cannot do so for the first time on appeal.[13] (ECF No. 7, at 9–10.) In the alternative, Appellee contends that the Court should affirm the Bankruptcy Court's exercise of discretion in denying the Motion to Dismiss. (ECF No. 7, at 13–18.)

Both of Mr. Malloy's claims raise questions of law that the Court reviews de novo. *Janvey*, 883 F.3d at 410; *In re Sunterra Corp.*, 361 F.3d at 263 (questions of statutory construction reviewed de novo).

For the reasons articulated below, the Court will affirm the § 707(b) Order and dismiss this appeal.

### A. The Bankruptcy Court Correctly Decided That § 707(b) Contemplates Abuse by the Debtor

Mr. Malloy first argues that the Bankruptcy Court erred in concluding that "abuse" under § 707(b) arises "[o]nly from [d]ebtor [m]isconduct" rather than "court-generated or trustee-generated abuse." (ECF No. 6, at 13–14.) He contends that because § 707(b) (which authorizes dismissal whenever "the granting of relief would be an abuse of the provisions of [Chapter 7]") does not state that "abuse" must be perpetrated by the debtor, the § 707(b) Order at bar must be reversed. (ECF No. 6, at 13–14.)

[13] In a footnote, Appellee argues that the Court should dismiss Mr. Malloy's appeal because he failed to timely file his opening brief in accordance with Federal Rule of Bankruptcy Procedure 8018. (ECF No. 7, at 4 n.1.) Mr. Malloy timely filed his brief, so the Court will not dismiss the appeal for this reason.

As an initial matter, the Court observes that Mr. Malloy did *not* argue in his Motion to Dismiss or at the Hearing that "abuse" under § 707(b) could extend to "trustee-generated abuse." Instead, the focus of Mr. Malloy's Motion to Dismiss was the Bankruptcy Court's purported "abuse." (Bankr. ECF No. 865, at 2–4; Bankr. ECF No. 890, at 23:3–25.) To the extent that Mr. Malloy now argues that "abuse" under § 707(b) extends to abuse by the *trustee* as well as a bankruptcy court, the Court cannot and will not consider that issue for the first time on appeal. *See United Rentals, Inc. v. Angell*, 592 F.3d 525, 531 n.2 (4th Cir. 2010).

The Bankruptcy Court correctly concluded that "abuse" under § 707(b) does not extend to abuse perpetrated by the court.[14] Although, as Mr. Malloy contends, the text of § 707(b) does not expressly state *who* must perpetrate the abuse under § 707(b), its statutory context and purpose conclusively demonstrate that § 707(b) is intended to prevent abuse by debtors, *not* by courts. This is true for at least two reasons.

First, § 707(b)'s structure and context illustrate that the term "abuse" in § 707(b) means abuse by a debtor, not by a court. To that end, section 707(b)(1) provides that a court may

[14] Even assuming that "abuse" under § 707(b) contemplates abuse by a court, Mr. Malloy does not clearly articulate how the Bankruptcy Court's conduct constituted "abuse." In his Motion to Dismiss before the Bankruptcy Court, Mr. Malloy contended that the Bankruptcy Court's conversion of the case from Chapter 13 to Chapter 7 "knowing that [Mr. Malloy] [could] pay [his] creditors without unnecessary dissipation of a surplus estate through liquidation" is "precisely the sort of abuse the statute is designed to prevent." (Bankr. ECF No. 865, at 1– 2.)

But as this Court explained in its Memorandum Opinion affirming the Bankruptcy Court's order converting the Bankruptcy Case from Chapter 13 to Chater 7, a Bankruptcy Court may, in its discretion, convert a case from Chapter 13 to Chapter 7 based on a finding of "cause" and when doing so is in the best interests of the estate and the creditors. *Malloy v. Schelin*, No. 3:25-cv-417, ECF No. 27, at 13–18 (E.D. Va. Sep. 1, 2026). Neither the statute governing conversion from Chapter 13, 11 U.S.C. § 1307, nor caselaw interpreting it, forbid the Bankruptcy Court from converting a case where the debtor's estate is solvent. *Malloy*, No. 3:25-cv-417, ECF No. 27, at 13–18. Thus, even assuming *arguendo* that "abuse" in § 707(b) could contemplate abuse by a court, Mr. Malloy has not established that the Bankruptcy Court would have "abused" the bankruptcy system.

dismiss a Chapter 7 case "if it finds that the granting of relief would be an abuse of the provisions of this chapter." Section 707(b)(2) then sets forth a complex statutory framework—the means test—based on which courts, depending on the debtor's income, "*shall presume*" that abuse exists. *Id.* (emphasis added); *see also In re Maharaj*, 681 F.3d 558, 573 (4th Cir. 2012) (explaining that § 707(b)'s means test is intended to be a "barrier for the use of Chapter 7" by debtors who make too much and who must instead proceed under Chapter 11 or 13). And a neighboring provision, 11 U.S.C. § 704, *mandates* that the United States Trustee determine at the outset of every Chapter 7 case whether, based *solely on the debtor's income*, the case is presumptively abusive. *See McDow v. Dudley*, 662 F.3d 284, 288 (4th Cir. 2011) (explaining that §§ 707(b) and 704 "manifest a congressional policy to police all Chapter 7 cases for abuse at the outset of a Chapter 7 proceeding"). Taken together, these statutory provisions reveal a strict framework for screening abuse by *debtors*—but its provisions are silent on screening for abuses by the *court*.

Second, an examination of the legislative history of § 707(b) likewise reinforces the conclusion that § 707(b) speaks to abuse by debtors, not by courts. Before Congress enacted § 707(b), "debtors enjoyed virtually unfettered right to a 'fresh start' under Chapter 7, in exchange for liquidating their nonexempt assets for the benefit of their creditors." *In re Green*, 934 F.2d 568, 570 (4th Cir. 1991). In "response to pressure from retailers and consumer lenders who complained of an increasing number of Chapter 7 bankruptcies being filed by non-needy debtors," Congress enacted § 707(b) in 1984. *Id.* "Section 707(b) introduced an additional restraint upon a *debtor's* ability to gain Chapter 7 relief, by allowing a bankruptcy court to deal equitably with the situation in which an *unscrupulous debtor* seeks to gain the court's assistance in a scheme to take unfair advantage of his creditors." *Id.* (emphasis added); *see Pollitzer v.*

*Gebhardt*, 860 F.3d 1334, 1338 (11th Cir. 2017) (explaining that Congress' "ultimate goal" in passing § 707(b) was to prevent "widespread and documented abuses of Chapter 7 by *consumer debtors* with significant ability to pay their debts") (emphasis added).

Finally, in response to continued concern about debtor abuse in Chapter 7, Congress amended § 707(b) in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). *McDow*, 662 F.3d at 288. BAPCPA made several notable changes to § 707(b), including lowering the threshold for dismissal from "substantial abuse" to "abuse"; adding the means test; and, replacing a statutory presumption in favor of a debtor's discharge with the presumption against debtors who fail the means test. *McDow*, 662 F.3d at 288; *In re Sonntag*, No. 10-1749, 2012 WL 1065482, at *2 (Bankr. N.D.W. Va. Mar. 28, 2012); *see also* 6 Collier on Bankruptcy ¶ 707.04[1] (16th ed. 2026) (describing BAPCPA's modifications to § 707(b)). "These modifications . . . were principally meant to curb perceived *abuses by Chapter 7 debtors* who had the ability to repay their creditors." *In re Sonntag*, 2012 WL 1065482, at *2 (emphasis added) (citing *In re Singletary,* 354 B.R. 455, 459 (Bankr. S.D. Tex. 2006)). At bottom, the legislative history indicates that Congress enacted § 707(b) in 1984, and amended it in 2005, in response to repeated concerns about *debtor* abuse, not abuse by the courts.

For at least these two reasons, the structure and legislative history of § 707(b) make abundantly clear that § 707(b) is designed to allow a bankruptcy court to equitably deal with "unscrupulous *debtor[s]*," not to permit a debtor to challenge purported "abuse" by the court. *In re Green*, 934 F.2d at 570 (emphasis added). Beyond merely quoting the text, Mr. Malloy provides no authority indicating that "abuse" under § 707(b) extends to purported abuse by the courts. Accordingly, the Court must conclude the Bankruptcy Court appropriately denied the

Motion to Dismiss based on Mr. Malloy's arguments that the Bankruptcy Court abused the provisions of § 707(b).[15]

### B. The Bankruptcy Court Correctly Declined to Dismiss the Bankruptcy Case Although Mr. Malloy Did Not Rebut the Presumption of Abuse

Appellee first argues that Mr. Malloy's Motion to Dismiss was based only upon on the Bankruptcy Court's purported abuse, and that because Mr. Malloy did not move the Bankruptcy Court to dismiss based on the unrebutted presumption of abuse, Mr. Malloy cannot now seek reversal and remand of the § 707(b) Order on this ground. (ECF No. 7, at 9–10.) Appellee next argues that, even if the Court considers Mr. Malloy's challenge to the Bankruptcy Court's discretion, this Court should affirm the § 707(b) Order because the Bankruptcy Court had discretion to deny the Motion to Dismiss. (ECF No. 7, at 13–18.) The Court addresses each argument in turn below.

#### 1. The Court Will Consider Mr. Malloy's Challenge to the Bankruptcy Court's Exercise of Discretion in Denying the Motion to Dismiss

First, Appellee correctly observes that Mr. Malloy did not *expressly* argue below, as he does on appeal, that the Bankruptcy Court lacked discretion to deny his Motion to Dismiss because he had not rebutted the presumption of abuse. Ordinarily, absent extraordinary circumstances, a party may not raise arguments on appeal that were not raised before the bankruptcy court. *See United Rentals, Inc.*, 592 F.3d at 531 n.2; *In re Paschall*, 408 B.R. 79, 87 (E.D. Va. 2009). But Mr. Malloy *did* argue that his income triggered the statutory presumption

[15] Indeed, to interpret "abuse" in § 707(b) to govern purported "abuse" by the courts would convert a statute aimed at curbing debtor abuse into one that creates a means for a debtor to challenge potential abuse by a court. (ECF No. 7, at 12.) It stretches credulity to believe that Congress intended for unhappy debtors to challenge bankruptcy court decisions with which they disagree based on purported "abuse" under § 707(b). After all, an avenue to challenge a bankruptcy court's decision already exists: appeal.

of abuse, (Bankr. ECF No. 865, at 3; Bankr. ECF No. 890, at 23:19–25), and the Bankruptcy Court ultimately exercised discretion not to dismiss the Bankruptcy Case despite the unrebutted presumption, (ECF No. 1-1, at 6 ("*declin[ing]* to dismiss [Mr. Malloy's case] under section 707(b) (emphasis added)). Because it is undisputed that Mr. Malloy did not rebut the presumption of abuse, (*see, e.g.*, Bankr. ECF No. 840; Bankr. ECF No. 865, at 1), and the Bankruptcy Court nevertheless declined to dismiss Mr. Malloy's case under § 707(b), the Court considers below whether the Bankruptcy Court appropriately exercised its discretion in doing so, or whether Mr. Malloy's failure to rebut the presumption of abuse required the Bankruptcy Court to dismiss the case.

### 2. Section 707(b) Grants Courts Discretion to Dismiss a Case Where the Debtor Has Not Rebutted the Presumption of Abuse

Second, Appellee argues that the Bankruptcy Court had discretion to deny Mr. Malloy's Motion to Dismiss even though he did not rebut the presumption of abuse. (ECF No. 7, at 13–19.) On de novo review, the Court agrees.

#### a. Legal Standard: Dismissal Under 11 U.S.C. § 707(b)

Once again, 11 U.S.C. § 707(b)(1) provides that a court "*may*" dismiss a case filed by an individual under Chapter 7 when granting relief would abuse the provisions of Chapter 7. A debtor's Chapter 7 case is presumptively abusive if the debtor's income exceeds a certain threshold based on the means test set forth in § 707(b)(2). A debtor whose income triggers the presumption of abuse can attempt to rebut that presumption by demonstrating that "special circumstances" exist that justify additional expense or income. *Calhoun*, 650 F.3d at 341 n.1 (quoting 11 U.S.C. § 707(b)(2)(B)(i)). What follows a debtor's inability to rebut (or, as here, decision not to challenge) the presumption of abuse remains unsettled within the Fourth Circuit because the Fourth Circuit has not squarely ruled on the issue.

Indeed, in two published opinions issued only several months apart, the Fourth Circuit provided—in dicta—seemingly inconsistent views on this issue. In *Calhoun v. U.S. Trustee*, the first of the two cases, the Fourth Circuit affirmed the bankruptcy court's dismissal of a Chapter 7 case as presumptively abusive. 650 F.3d at 342. In affirming the decision, the *Calhoun* court offered background on § 707, stating that § 707(b) "*permits the court's dismissal*" of a case filed by an individual debtor where relief would be a presumption of abuse. *Id.* at 340. Notably, the *Calhoun* court did not state that § 707(b) *required* the bankruptcy court to dismiss such a case.

Just six months later, in *McDow v. Dudley*, another panel of the Fourth Circuit considered whether a bankruptcy court's decision denying a § 707(b) motion to dismiss was final and appealable under 28 U.S.C. § 158(a). 662 F.3d 284. In holding that it was, the Fourth Circuit again described § 707(b) and the means test, this time stating that once the presumption of abuse is triggered, the case "*must be dismissed unless the debtor can show special circumstances*." *Id.* at 288 (emphasis added).

Absent clear authority from the Fourth Circuit, district and bankruptcy courts within this circuit have taken varying approaches. First, several courts have held that a court *must* dismiss a Chapter 7 case under § 707(b) when the debtor fails to rebut the presumption of abuse, *Gallagher v. Cohen*, 659 B.R. 57, 66–68 (D. Md. 2024); *In re Alther*, 537 B.R. 262, 270 (Bankr. W.D. Va. 2015). Others have read the statute as discretionary, meaning that the bankruptcy court may, not must, dismiss the case even when the debtor fails to rebut the presumption of abuse. *In re Jenkins*, No. 12-50413, 2012 WL 2564901, at *2–3 (Bankr. W.D.N.C. July 2, 2012). At least one court has taken a middle ground finding that, in most cases, § 707(b) requires a court to dismiss a case where the debtor does not rebut the presumption of abuse

unless doing so would create an absurd result. *In re Siler*, 426 B.R. 167, 173, 176–77 (Bankr. W.D.N.C. 2010).

#### b. 11 U.S.C. § 707(b) Permits but Does Not Require Dismissal of a Chapter 7 Case that is Presumptively Abusive and the Bankruptcy Court Correctly Declined to Dismiss Mr. Malloy's Chapter 7 Case

For three reasons, the Court finds that § 707(b) *permits* but does not *mandate* dismissal of a Chapter 7 case that is presumptively abusive where, as here, the bankruptcy court converted the case from Chapter 13 to Chapter 7 after finding (1) that the debtor showed bad faith when pursing Chapter 13 relief and (2) that proceeding in Chapter 7 would be in the best interests of the estate. Specifically, the plain language of § 707(b), the statutory context, and the absurd result of mandating dismissal in a case like the one at bar compel the Court to conclude that, on these facts, the Bankruptcy Court was not required to dismiss the case.

##### i. The Plain Meaning of the Text in § 707(b) Renders § 707(b) Discretionary

First, the Court turns to the text. *See Lynch*, 853 F.3d at 121 (explaining that courts "start . . . with the plain language of the statute"); *In re Jenkins*, 2012 WL 2564901, at *2 ("Courts are instructed to construe statutes based on the plain meaning of the statutory text.") (citing *In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004)). Here, § 707(b) "clearly states that bankruptcy courts 'may dismiss' a case based upon the results of a means test; it does not affirmatively require that bankruptcy courts 'shall dismiss' the debtor's case in each and every instance where the presumption of abuse is a factor." *Id.* (citing § 707(b)(1)). As the United States Supreme Court has repeatedly ruled, the word "may" in a statute "*clearly* connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (emphasis in original) (quoting

*Biden v. Texas*, 597 U.S. 785, 802 (2022)).[16] Thus, "[b]ased on the plain meaning of the text of Section 707(b)(1), the [C]ourt concludes that the use of the word 'may' as opposed to 'shall' provides that conversion or dismissal of a case is discretionary." *In re Jenkins*, 2012 WL 2564901, at *2; *In re Mravik*, 399 B.R. 202, 206–09 (Bankr. E.D. Wis. 2008); *In re Skvorecz*, 369 B.R. 638, 642–43 (Bankr. D. Colo. 2007); 6 Collier on Bankruptcy ¶ 707.04[3][a] (16th ed. 2026) ("[T]he court need not dismiss the case even if the presumption of abuse is not rebutted.").[17]

**ii. The Statutory Context Supports a Finding That § 707(b) is Discretionary**

Second, other provisions in Chapter 7 indicate that dismissal is discretionary rather than mandatory. *See Lynch*, 853 F.3d at 121 ("[I]t is a fundamental canon of statutory interpretation that the words of a statute must be read in their context and with a view to their place in the

[16] This principle is particularly true where the same provision uses both "may" and "shall" in different places. In such a case, the "'the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory.'" *In re Mravik*, 399 B.R. 202, 206–09 (Bankr. E.D. Wis. 2008) (quoting *Kentucky v. United States*, 424 F.3d 1222, 1227 (Fed. Cir. 2005)). Such is the case here: § 707(b)(1) provides that a court "*may*" dismiss a case, while the following subsection, § 707(b)(2), provides that a court "*shall*" presume abuse under certain circumstances.

[17] Although Mr. Malloy does not argue that § 707(b) provides *any* discretion to courts, the Court briefly observes other courts have found that § 707(b) is discretionary only insofar as it permits a court to choose between dismissal or conversion (if the debtor consents). *See, e.g.*, *In re Alther*, 537 B.R. at 271 ("The discretion under section 707(b)(1) is limited to ordering dismissal or permitting conversion.").

The Court declines to adopt this interpretation of § 707(b). As another court cogently observed, such a reading does not comport with the history of § 707(b). *In re Mravik*, 399 B.R. at 209. Congress, through BAPCPA, added the option to convert the case in 2005. *Id.* But § 707(b)'s language that a court "may" dismiss an abusive case has been part of the statute since 1984. *Id.* As the *Mravik* court appropriately concluded, "[t]hat dismissal was the sole option for 21 years prior to BAPCPA and Congress did not change the word 'may' when adding the option to convert to Chapter 13 suggests that the term means more than the choice between the options of dismissal or conversion." *Id.*

overall statutory scheme.") (quotation omitted). A neighboring provision, 11 U.S.C. § 704 *requires* the United States Trustee (through use of the mandatory "shall") to identify potentially abusive Chapter 7 filings under § 707(b). If the case is presumptively abusive, § 704(b)(2) mandates the United States Trustee to employ his or her *discretion* to determine whether to file a motion under § 707(b). Stated another way, the *United States Trustee* can (as he did here) decline to file a motion to dismiss or convert even if the case is presumptively abusive when he or she believes that such a motion would not be "appropriate." Reading § 707(b) to mandate dismissal or conversion by the bankruptcy court while other provisions of Chapter 7 bestow discretion on the United States Trustee to determine whether to seek dismissal or conversion would produce an inconsistent outcome in different parts of the statute. *In re Mravik*, 399 B.R. at 209 ("It would be curious indeed to grant the U.S. Trustee discretion to determine that dismissal is not appropriate, but to deny discretion to the Bankruptcy Judge to reach that same conclusion."). The Court declines to read the statute to include this contradictory meaning.

#### iii. **Mandating Dismissal Under § 707(b) on the <u>Instant Facts Would Create an Absurd Result</u>**

Third and finally, reading § 707(b) to require dismissal would, in the case at bar, create an absurd result. The Bankruptcy Court converted Mr. Malloy's case from one under Chapter 13 to one under Chapter 7 after finding that (1) Mr. Malloy engaged in bad faith during the Chapter 13 proceedings and (2) conversion would be in the best interests of his creditors and the estate. (Bankr. ECF No. 762, at 5–6.) The Chapter 7 Trustee acknowledged as much in his written opposition to Mr. Malloy's Motion to Dismiss. (Bankr. ECF No. 874, at 2 (informing the Bankruptcy Court that he was "not aware" of information that would warrant the Court's dismissal of the Bankruptcy Case).) The United States Trustee mirrored that position in oral argument during the Hearing. (Bankr. ECF No. 890, at 36:20–37:5 (remarking that the

Bankruptcy Court "previously converted the case to Chapter 7, finding that it was the best approach for the case" and urging the Court to exercise its discretion in denying the motion to dismiss).) As the text and legislative history indicate, the purpose of § 707(b) is to prevent abuse of the Bankruptcy Code by precluding a debtor from benefitting from a discharge under § 707(b) at the expense of his or her creditors. Granting Mr. Malloy's Motion to Dismiss would defy that purpose: it would allow a debtor found to have abused the bankruptcy process by engaging in bad faith during a Chapter 13 proceeding to continue to evade his obligations under the Bankruptcy Code. (*See* ECF No. 762, at 5–6 (detailing Mr. Malloy's dilatory tactics to avoid conveying the Property to the Purchasers).)

Indeed, several courts have declined to read to § 707(b) as requiring dismissal or conversion when doing so would create an absurd result, including by limiting (or eliminating) the likelihood that certain of the debtor's creditors would recover. *See In re Siler*, 426 B.R. a 171; *In re Mravik*, 399 B.R. at 206–10; *In re Skvorecz*, 369 B.R. at 643.[18] For example, in *In re Siler*, the United States Bankruptcy Court for the Western District of North Carolina adopted the view that dismissal was ordinarily mandatory when the debtor failed to rebut the presumption of abuse. 426 B.R. at 173. But it did so with an important caveat: it created a carveout where

---

[18] The Court notes that the bankruptcy court in *In re Alther* acknowledged and expressly disagreed with *In re Siler*'s decision to decline to dismiss the case under § 707(b) based on absurdity. *In re Alther*, 537 B.R. at 271 n.6. The *Alther* court explained: "If the means test under chapter 7 shows the presumption of abuse, and the debtor does not rebut the presumption, denying relief under chapter 7 to this debtor simply leaves the debtor to non-bankruptcy options or relief under other chapters." *Id.*

The Court declines to find—particularly on the present record—that § 707(b)'s shield against debtor abuse is so inflexible as to *require* dismissal of a Chapter 7 case even when doing so would prevent creditors from recovering from the debtor. *See Janvey*, 883 F.3d at 410–11 (explaining that the Bankruptcy Code "balances the interest of both *creditors and debtors*" and serves the interests of creditors by ensuring that "the debtor's unsatisfied obligations to creditors are paid to the extent possible").

dismissal would create an absurd result. 426 B.R. at 173, 175–76. Namely, the debtor argued, and the bankruptcy court agreed, that barring her from Chapter 7 based on the means test would be "absurd" because, although her income meant that her Chapter 7 case was presumptively abusive, she would have a negative disposable income calculation under Chapter 13 that would render her unable to make payments to her unsecured creditors in a Chapter 13 plan. *Id.* at 176–77. Citing this absurd outcome, the court in *In re Siler* ultimately exercised its discretion and did not dismiss the Chapter 7 case although the debtor had not rebutted the presumption of abuse. *Id.* at 177–78.

As in *In re Siler*, requiring dismissal of Mr. Malloy's Chapter 7 case would create an absurd outcome: for over two years, Mr. Malloy refused to propose a facially confirmable Chapter 13 plan. (Bankr. ECF No. 762, at 5–6.) When faced with liquidation in Chapter 7, Mr. Malloy reversed course by insisting that he would pay his debtors outside of the bankruptcy context. The Bankruptcy Court was unpersuaded, and this Court agreed. *Malloy v. Schelin*, No. 3:25-cv-781 (MHL), ECF No. 19, at 11 (E.D. Va. Sep. 11, 2026). In short, nothing in the present record assures that Mr. Malloy would be willing to pay his creditors were the Bankruptcy Case dismissed. Granting Mr. Malloy's Motion to Dismiss would effectively create the same absurd result as in *In re Siler*: it could virtually eliminate the chances that Mr. Malloy's creditors could recover.

In finding that requiring dismissal would create an absurd result, the Court recognizes that the Bankruptcy Code is designed to "balance[] the interests of both creditors *and debtors*." *Janvey*, 883 F.3d at 410–11 (emphasis added). Although the Bankruptcy Court found that conversion was in the best interests of Mr. Malloy's creditors and the estate, its determination was not at Mr. Malloy's expense. To the contrary, Mr. Malloy's interests have been amply

protected through years. The Bankruptcy Court gave Mr. Malloy *three* opportunities to submit a confirmable Chapter 13 plan, and Mr. Malloy thrice failed to do so. In repeatedly proposing facially unconfirmable plans, Mr. Malloy disregarded Bankruptcy Court orders and frequently misrepresented the facts and the law. After Mr. Malloy employed every roadblock he could find in the more than two years of litigation, the Bankruptcy Court had no choice but to convert the case to Chapter 7 based on Mr. Mally's bad faith. *See Janvey*, 883 F.3d at 412 (explaining that bad faith is a finding reserved for only the most "egregious cases").

This Court and the Fourth Circuit have also protected Mr. Malloy's interests for years. Throughout the litigation, Mr. Malloy has appealed nearly every order of the Bankruptcy Court to this Court, and every order of this Court to the Fourth Circuit. Both courts carefully reviewed and addressed each of his appeals and his prolix losing arguments. So many of those appeals have been frivolous that this Court recently warned that additional frivolous appeals would risk a prefiling injunction. *Malloy v. Schelin*, No. 3:25-cv-417 (MHL), ECF No. 27, at 18; ECF No. 28, at 1 (E.D. Va. Sep. 1, 2026).

At bottom, the facts of Mr. Malloy's case present exceptional circumstances that compel this Court to find that dismissal is permissive. The plain language of § 707(b), its surrounding context, and the absurdity of requiring dismissal on these "rather unusual facts," *In re Siler*, 426 B.R. at 171, all compel the Court to find as the Bankruptcy Court did: that dismissal is permissive, not mandatory. Continuation in Chapter 7 is not only supported by the law, it is seemingly manifest given the absurdity of this three-year-long Bleak House-like litigation over a property worth perhaps one million dollars but depreciating in value each day.

**c. Mr. Malloy's Arguments to the Contrary Do Not Persuade the Court That Dismissal Under § 707(b) Is Mandatory Where the Presumption of Abuse is Unrebutted**

Mr. Malloy's arguments to the contrary do not compel a different outcome. In his appellate brief, Mr. Malloy insists that this case is nearly identical to *Gallagher v. Cohen*, and that the Court should conclude that dismissal under § 707(b) is mandatory. (ECF No. 6, at 15–18 (citing 659 B.R. 57).) To be sure, the facts presented in *Gallagher* are similar to those presented here: after Gallagher initiated his bankruptcy case by filing a voluntary Chapter 7 petition, his income increased, so Gallagher moved the bankruptcy court to convert his case from Chapter 7 to Chapter 13. 659 B.R. at 60. Gallagher next filed several proposed Chapter 13 plans, which the bankruptcy court denied and ultimately used as a basis to reconvert his case to Chapter 7. *Id.* at 60–61. Gallagher then moved the bankruptcy court to dismiss his Chapter 7 case as presumptively abusive under § 707(b). *Id.* He made no effort to rebut the presumption. *Id.* Finding that it had discretion to deny the motion to dismiss, the bankruptcy court did so, explaining that Gallagher "had enjoyed the benefits of the bankruptcy process for over a year, the Trustee had been administering the case, and Gallagher's creditors would be prejudiced by dismissal." *Id.* Gallagher appealed the bankruptcy court's denial to the United States District Court for the District of Maryland, who reversed the bankruptcy court's decision on the grounds that the bankruptcy court lacked discretion to deny the motion to dismiss because Gallagher had not rebutted the presumption of abuse. *Id.* at 68.

Despite the factual similarities above, material factual differences render *Gallagher* inapposite. First, Gallagher initiated his bankruptcy case in Chapter 7 and bounced between the two chapters because of his varying income, while Mr. Malloy proceeded in Chapter 13 from the start. In addition, *Gallagher* does not state that Gallagher's case was converted to Chapter 7

based on bad faith,[19] while the Bankruptcy Court converted Mr. Malloy's case to Chapter 7 only after making such a finding.

Second, the Court sees a more nuanced reading of § 707(b), including decisions in Fourth Circuit cases. For instance, *Gallagher* relies on dicta in *McDow* stating that the bankruptcy court must dismiss or convert a Chapter 7 case under § 707(b) in the absence of a rebutted presumption of abuse, 659 B.R. at 67–68 (citing *McDow*, 662 F.3d at 288), but does not discuss other dicta in *Calhoun* stating that dismissal is permissive, *Calhoun*, 650 F.3d at 340 ("As amended by BAPCPA, § 707(b) *permits* the court's dismissal of 'a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that granting relief would be an abuse of this chapter.'") (quoting § 707(b)(1)).

And with respect to trial court decisions, *Gallagher* cites two bankruptcy court cases within the Fourth Circuit to support the conclusion that "[bankruptcy courts] within the Fourth Circuit have consistently concluded that dismissal under § 707(b) for abuse is mandatory." 659 B.R. at 67 (citing *In re Alther*, 537 B.R. at 271, and *In re Siler*, 426 B.R. at 173.) Detailed discussion of trial courts within this circuit finding that dismissal is discretionary do not appear in that decision. *See, e.g.*, *In re Jenkins*, 2012 WL 2564901, at *2–4. Moreover, this Court sees *In re Siler* as finding that dismissal is *not* mandatory where the presumption is unrebutted but dismissal would create an absurd result. *Gallagher* makes no mention of *In re Siler*'s carveout, nor does it note that the *In re Siler* court ultimately exercised discretion and declined to dismiss the case. 426 B.R. at 173, 175–76.

---

[19] Indeed, Gallagher appears to have sought changes in his bankruptcy petitions so the record would accurately reflect his increasing income. *Gallagher*, 659 B.R. at 60–62.

Third and finally, the *Gallagher* court rightly acknowledged that "there are good reasons to read the statute" as making dismissal discretionary, rather than permissive, including the plain text of § 707(b). 659 B.R. at 67–68. Nevertheless, the court concluded that it could "ignore [neither] the contrary interpretation of the Fourth Circuit" nor the "contrary readings of the other district courts in the Fourth Circuit's jurisdiction." *Id.* at 68. But this Court finds that the broader legal landscape paints a different picture.

Because the text of § 707(b), the structure of the Chapter 7 code, and the facts of this case resoundingly demonstrate that § 707(b) affords a bankruptcy court discretion to dismiss a case even where the debtor has failed to rebut the presumption of abuse, the Court concludes that the Bankruptcy Court correctly denied the Motion to Dismiss in the § 707(b) Order. The Court will affirm the § 707(a) Order and dismiss the appeal.

## IV. Conclusion

For the reasons articulated above, the Court will affirm the § 707(a) Order and dismiss Mr. Malloy's appeal.

An appropriate Final Order shall issue.

Date: 9/28/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge